I would like to make rebuttal, Your Honor. I'd like to reserve 6 minutes for rebuttal. Okay, so try to watch your time yourself. And if you forget, if I'm able to, I'll remind you. But, of course, if you get peppered with questions from the panel, you'll be allowed to take time to answer fully. Thank you, Your Honor. Your Honor. May I please proceed? May it please the Court. In early 2020, early April 2020, as the COVID pandemic ravaged its business, RBC initiated the first in a series of company-wide layoffs and furloughs to cut costs. Richard Mooney was one of the employees laid off in that first wave. He was an expensive employee with an extensive history of insubordination and middling results. The prior fall, RBC had even considered terminating him. Before going on FMLA leave in January 2020, Mr. Mooney knew that his days were probably numbered based on the feedback he'd gotten from his employer. His extension of leave changed nothing. He'd have been laid off in April, whether he returned as originally planned or whether he extended his leave. He always met the three— Counselor, can I clarify? There was another issue that was briefed, and that's the issue of reversal based on alleged misconduct. That issue's been conceded, so now we're talking about sufficiency of the evidence? That is correct, Your Honor. We're talking about the CR-59, sufficiency of the evidence, the weighing of the evidence, and the district court's order. On sufficiency of the evidence, you're swimming a little bit uphill because now we've got a jury verdict, and the district court analyzed it and said, well, there's some evidence to support the jury's verdict. Can you address that directly? Yes, Your Honor, and the fact that there is some evidence or that the jury could have believed is not the proper standard under Federal Rule 59. The standard requires the court to weigh the evidence, and when you look at the objective evidence before the court, when you look at the overwhelming weight of the evidence, Mr. Mooney was terminated because he was expensive, because he was insubordinate, and because he failed to perform. Now, you just said what's the right standard under which we judge this now that we've got a jury verdict? How is that standard articulated? Well, the standard under Rule 59 is different from the standard under Rule 50, which provides that if there is, you know, you give deference to the jury verdict. Under Rule 59, the court is to conduct an independent review, and here the court, one, we don't think it really conducted it. You don't mean de novo? It is an abusive discretion standard, but where the court's order evidences an error of law, this court evaluates that part of the court's order under a de novo standard because an error of law is always an abuse of discretion, and the court determines whether there was an error of law that then leads to an abuse of discretion. How is this an error of law? This is really a question. Is there sufficient evidence to support the jury verdict? Throughout the court's order denying the request for a new trial, the court said the jury could have believed, or the jury could have thought, or this could be. I don't think that's the standard that the district court did. The district court talked about what was required to prove the claims, and the district court noted that circumstantial evidence can support the jury's verdict, and then the district court detailed some of the circumstantial evidence that could have supported the verdict. I think it was April when he was terminated. He was the only one. There was a PIP in place, but that had been some months earlier, I think almost a year earlier. So why aren't those facts sufficient circumstantial evidence to support the jury's verdict? Well, they're not because the court in its order said Mooney had not been disciplined after the expiration of the PIP. While he hadn't been subjected to another PIP, he had not been suspended, but the record shows that there was a consistent pattern of discipline in September at ER 471. Mr. Mooney was told it is unacceptable to make 50 calls without writing a single report of call. That is a reprimand. That is a form of discipline, even if it did not result in termination, suspension, or another performance improvement plan. In the call with the company president, the company emphasized the importance of writing reports of call. Mr. Mooney, throughout his entire employment at RBC, disagreed about the importance, variously describing them as stupid, redundant, and a waste of time. When Mr. Mooney's review was finished in January of 2020 at ER 396, RBC told him he got no raise, either merit or performance, or merit or COLA, because of his performance or lack thereof on the PIP and his continued failure to consistently write reports of call. So Mr. Mooney was being disciplined all throughout the period after the PIP, reprimanded, cajoled, instructed, and he continued his insubordinate behavior. You know, if I were a juror, I might be very sympathetic to your argument, but I'm not a juror. Correct, Your Honor, but the fact that the court is even sympathetic to this argument suggests that the trial court, in evaluating the motion for a new trial, should have weighed the evidence, and the weight of the evidence is against it. The trial court said, Mr. Mooney... You know, we're having a problem, or at least I'm having a problem with just what our standard of review is. I owe a considerable amount of deference to what the jury did. The court owes some deference to what the jury did, but there must be more than the possibility that the jury got it right. Both the trial court and this court, under Rule 59, are to weigh the evidence, evaluate its sufficiency, and we suggest that the objective evidence here and the extensive evidence is that Mr. Mooney's discharge in April of 2020 was coincidental with his return from FMLA leave, nothing more, and that the jury and the trial court, to some degree, seems to have bought into Mr. Mooney's argument post hoc propter hoc that since this occurred after he extended his FMLA leave, that it must have been beforehand. If you look at the evidence, you look at the testimony, you look at the documentary evidence with his performance compared to other sales engineers' performance, Mr. Mooney was at the bottom of the barrel and he satisfied all of the three objective criteria that RBC had set out. In its order, the court pointed to the fact that Mr. Mooney was let go when other employees with less seniority were retained. Well, the memorandum identifying the criteria on which Mooney and other employees were to be evaluated, seniority had nothing to do with it, nor was there any evidence that RBC had ever used a last hired, first fired test in implementing layoffs, yet the court said this is evidence that Mr. Mooney was let go because of FMLA leave and it's simply not supported in the record. The court pointed to his 4% bonus in the fall of 2019 as evidence that he was performing well. Well, that 4% bonus was out of possible 15% suggesting middling performance. There was testimony that no sales engineer had ever gotten a zero discretionary bonus because part of the bonus was based on the company's overall performance. So that 4% bonus based on the objective facts, based on the testimony, was despite Mr. Mooney's performance, not because of it. There are two elements I'd like the court to take a look at and those are found at SER 612 and then ER 425 to 450. SER 612 is Mr. Mooney's summary one page of blended sales data showing him as the number three sales engineer at RBC. It doesn't show how much revenue he brought in. He brought in $2.7 million worth of revenue. But in Mr. Mooney's view of the world, he was more valuable to the company than Chris Stricker who brought in $17.7 million worth of revenue, more valuable than Brad Kyneth who brought in $9.5 million, more valuable than Dave Marchant who even after a 25% hit on his productivity that year still brought in almost three times Mr. Mooney's revenue. If the court had looked at the objective facts and weighed the actual evidence before the court, it would see that Mr. Mooney was at the bottom of the barrel and that RBC discharged him precisely for the reasons that were set out in its April 2 memo. Now the court criticized Mr. Ross's testimony based on a demonstrative exhibit, but the demonstrative exhibit wasn't part of the record. It's not evidence. The reports at ER 425 to 450 detailing and comparing Mooney's performance to other employees, other sales engineers, are evidence. I suggest that the court failed in its obligation under Rule 50 to evaluate and weigh the evidence independently. I know that you're concerned about the issue that you've been arguing. There's a tiny point in this case for which I would be assisted, and that's the question of interest rate. Could you address that? Yes, Your Honor, and then I would like to reserve the rest of my time. Mr. Mooney brought his case under the FMLA leave statute. As a tag-along, he added the Washington statute as well. Mr. Mooney's counsel proposed the jury instruction that is at issue here, which uses an and-or, and where there is an undifferentiated jury verdict that has both federal and state claims in it, the rule is that the federal rule applies, not the state interest rate. Thank you. Is that established in this circuit? It is established in other circuits, and there is over a decade. One other circuit. I believe it's both the Second and the Eighth Circuit have both adopted it, Your Honor, and there's a decade's worth of district court decisions in this circuit adopting that view. Thank you. Good morning, Your Honors. May it please the Court, my name is Mark Middaw, here on behalf of Mr. Mooney, who's present in the Court today. This Court has made clear that a district court's order denying a new trial motion based on sufficiency of the evidence is virtually unassailable on appeal. The district court's order denying the new trial motion was thorough and well-reasoned, full of citations to the record, and it included specific findings about witness demeanor. There's no legal basis to disturb these findings on appeal. Unless the Court has further questions about the sufficiency issue, I'd like to turn to the two issues raised on cross-appeal related to prejudgment interest and attorney's fees. On the prejudgment interest, is it a discretionary determination by the district court? I don't believe so. I believe it has to be a matter of law, because this is fundamentally deriving from... Different district judges have chosen different ways to approach that, so I'm not sure how that's a question of law. If you're bound by it, so all the judges who basically went for the federal rate are just wrong as a matter of law. That's your position? Yes, Your Honor, because this court has consistently said that when there's a state law claim that's before a district court due to the exercise of diversity jurisdiction, the state law interest rate applies as a fundamental application of the Erie Doctrine. When there are these concurrent claims... You have a federal claim in here and an equivalent state law claim. Correct. There's no way of telling, but I can tell from the jury instruction, which claim drove the jury's verdict, right? Well, they're identical legal standards, Your Honor, so there could not possibly be a difference. They were instructed in the same jury instruction on both claims. But that's not dispositive to this issue, because this court said in O'Carver Freight that the question is whether the jury's verdict is based on federal law alone or state law alone, and you only apply the federal interest rate if the claim is based on federal law alone. And I understand that the Second Circuit... I just don't think in this circuit that we've got any case law that resolves the question. I agree with you, Your Honor. I believe this is a matter of first impression in this circuit. The Thomas case in the Second Circuit I'd like to address briefly. Could the court have used the blended rate? No, Your Honor. I think that the court had to apply the state law rate to the state law claim. I don't believe that there was wiggle room for the court to apply a blended rate. If the court, for example, on a post-judgment interest claim, the court is bound to apply the federal rate that's established by statute, Section 1961, and the court has the option under Section 1961 to do a plus-up above the federal rate if it determines in the exercise of its discretion that the federal rate is too low. So in circumstances where the post-judgment interest rate applies and the federal rate applies, the court does have the discretion to add to that rate if it believes the equities require that. But on the question of whether federal or state law applies as a matter of impression, that is a question of law that I think has to be reviewed de novo, and I think it is a question of law that simply has to be resolved by this court. I understand the Second Circuit in the Thomas case said that the federal rate has to apply under these circumstances, and it did resolve that as a matter of law. It did not indicate that there was discretion. I don't think the Thomas case is particularly persuasive for a couple of reasons. The first is the Thomas case did not contain a significant amount of analysis about the Erie Doctrine, the application of federal. I think that's an understatement. They gave you no analysis. They gave us an answer but no analysis. Well, and then if you go even deeper, kind of peel the onion back another layer, they cited a bunch of district court cases, and if you go and look at what those district court cases say, those district court cases just say, well, this is the way that we've always done it, and I don't think that that's a legal rationale that carries a lot of persuasive authority in this circuit. So I do think, and I will concede that they're not directly on point, but the statements in the Exxon case and the statements in the Oak Harbor Freight case really do strongly imply that when there's a state law claim at all that's before the court as a result of diversity jurisdiction, which this one was. There was also, of course, a federal question jurisdiction issue before the court, but Mr. Mooney was here even if he had dismissed the FMLA claim, the federal FMLA claim, because there was diversity of the parties, and it wouldn't have done him any good if he wanted to be back in state court to dismiss that claim. So it is an issue of first impression in this court, and I think the maybe most intellectually consistent way to say is if you have a federal claim and a state law claim, then the court simply applies the federal interest rate to the federal claim, the state interest rate to the state law claim, and the plaintiff just gets to pick which one they want to collect on. That would, I think, be consistent with the animating principles. It would like that. I get that. Plaintiffs would absolutely like that, Your Honor. I'm sure Mr. Mooney would, yes. But I think it also is kind of intellectually consistent, and certainly if you look in criminal law, if a plaintiff brings a case in state court and federal court and gets convictions in both for the same conduct or for the same crime, the defendant serves the longer sentence. They don't serve the shorter sentence, so it would be consistent with that area of law as well. Unless the court has further questions, I'd like to just briefly address the attorney's fee issues. Counsel, I have one question on the last issue you addressed. If our panel decided to resolve this case in a precedential opinion, what should be the rule of law, in your view, that we would adopt when there are concurrent federal and state claims? And the jury hasn't differentiated. I believe that the federal interest rate should apply to the federal claim, the state interest rate should apply to the state claim, and the plaintiff should have the choice as to which judgment to collect upon. Okay. Thank you. Thank you. With regards to the attorney's fee issue, the district court made a finding that a reduction based on the quality of counsel was appropriate. This court has said that reductions based on the quality of counsel require a showing of abysmal performance, and there is nothing in the record of the court below that this case was litigated abysmally. Just looking at the docket, you can see that there was a motion practice that was thorough and professional. Reading the trial transcript, you can see that this case was competently litigated by the parties. There was no abysmal representation here. The only issue that was raised by the district court with respect to attorney's fees was purported misconduct in opening and closing, and that is not a recognized basis for reducing attorney's fees. The court added to that this idea that there was a lack of success, citing the fact that the Minimum Wage Act claim was dismissed and that Mr. Mooney was unsuccessful on his WLAD claim as well. I just want to point out for the court, Mr. Mooney did not submit any bills related to the Minimum Wage Act claim, so citing that as a lack of success, as a justification for reducing attorney's fees, is not really supported by the record. It'll remind me, how much was the fee request reduction? Not very much. Ten percent. And while a smaller reduction does not require the same type of justification or explanation by the court as a larger fee reduction, this court does have an obligation to ensure that it was consistent with statements that this court has made about impermissible double counting. And when the district court reduced the fee by ten percent, it first went through Mr. Mooney's time slips with really a fine-tooth comb. It's a very detailed order. And excluded a substantial number of time slips for work that it found was not related to the successful claims. Then the court separately said, because there was an overall lack of success, I'm going to reduce the fee by an additional ten percent. And I think that, generally speaking, this court's precedents stand for the proposition that the court gets to do one or the other of those tasks, but not both. That's the impermissible double counting that this court has cautioned against. And this court has consistently said that a lack of success is going to be subsumed into the Lodestar calculation. So our position is that the court, when it went through and excised those time slips and specifically noted that no time was expended on the Minimum Wage Act claim, that that was sufficient to account for the overall lack of success. And the additional ten percent reduction was not justified. And while I understand that federal law is clear that taking cases on contingent fee basis is not a basis for an upward multiplier under federal law, it is consistent with Washington state public policy to, frankly, reward attorneys who are willing to take cases on a contingent fee basis, who are willing to vindicate the rights of individuals who have been discriminated against by their employers. And the jury entered a well-supported finding that he was, in fact, the subject of unlawful employment discrimination and that he was entitled to damages as a result. So while there was a lack of success on the WLAD claim, the court's finding that the WLAD work and the FMLA work was based on a common core of facts that was inseparable should support the full attorney's fee award in this case. Unless the court has any further questions, I'm happy to... I have none. I have none. Thank you. Thank you, Your Honor. Thank you, counsel. So we'll... hear from appellant on rebuttal. Okay. A couple of points, Your Honors. With respect to the modest reduction in attorney's fees, Mr. Mooney had less than complete and less than full success. He abandoned his Minimum Wage Act claim? Yes. He prepared his complaint, including the Minimum Wage Act claim. There was also excessive embezzlement. There was extensive testimony during the trial and during the briefing in this case regarding Mr. Mooney's non-economic harms, the stress that he felt while working there, the stress that he suffered after being discharged. The jury awarded nothing on his assertions that he suffered any non-economic damage. The court's modest 10% reduction for lack of success and quality of representation was amply, amply supported by its order. It suggests to the court that repeated violations of court orders and directions during the course of trial are not within the norm, are not within the standard of practice, and do not represent the quality of representation that the federal courts expect from counsel. Simply put, the court's reduction of 10% in the fee award was appropriate. Mr. Mooney contends that the court should award the state interest rate on a federal claim. This case was not simply brought as a diversity case. Mr. Mooney elected from the outset to raise the Federal Family Medical Leave Act as the basis for his case, and in doing so, he was able to access and rely upon a vast, vast supply of law in the federal courts under that statute in comparison to Washington's dearth of authority under its Family Medical Leave Act statute. And in doing so, he obtained a benefit by pleading his federal case. This is not simply a diversity case. This is a case involving federal jurisdiction and a federal claim and an undifferentiated jury verdict. Mr. Mooney's counsel is asking the court to go behind that jury verdict and figure out what it is that the jury awarded. Should the district judge have discretion? Is there a formal rule that it has to be federal? I mean, what rule should we... I mean, it's an open question in the circuit. So what should the circuit rule be? I would suggest, Your Honor, that where a plaintiff brings a case invoking federal subject matter jurisdiction before this court, that the plaintiff has elected the federal rate. If it is simply a diversity case as in Exxon Valdez or other diversity cases where the state... where the court is to apply state law under the Erie Doctrine... Now, those are the two easy cases, federal case or state case. This is a combined case. So what do we do with the combined case? I think with the combined case, Your Honor, the rule is that if you bring a federal claim under a federal statute and seek relief under federal law, federal law applies across the board. So why is that so? I understand you want to pick that one because it gives a better number, but... I mean, you could just as easily say, well, I brought a state claim. I should therefore get the state rate of interest. Well, because the plaintiff, Your Honor, has the option in deciding whether to proceed under diversity jurisdiction... Well, to proceed it under both. And the jury awarded an undifferentiated... And the jury awarded under both. And you'd like to choose the one rather than the other, but they're both in there. I would suggest the court should not try to get behind the jury verdict and decide which claim it was and what entered into the jurisdiction. Well, you're trying to get behind it and say, well, we should pay attention to the federal. Well, I understand why you do that, but I'm trying to get to the rationale. Well, one rationale is it is a clear rule of law. I don't think that Mr. Mooney has given the court a good reason to reject the Second Circuit's... Well, I mean, could the parties have proposed a jury verdict that differentiated between the federal and state claim in anticipation of the fact that there's a dramatic difference in this instance of the rate under state law versus the federal rate? Absolutely, Your Honor. And the jury instruction that is at issue here was proposed by Mr. Mooney. And if there is an ambiguity or problem that arises as a result of that, Mr. Mooney should bear the brunt of that problem, not RBC. Counsel, I think your time is up, but I do have a question, so I'll take you a little overtime. Do I understand correctly that your proposed rule to cover an undifferentiated verdict is that if there's both a federal law and a state law claim, that the federal rate should apply? It is somewhat more nuanced than that, Your Honor. It is where there is an undifferentiated federal and state law claim, and this problem could have been solved with a separate jury instruction saying, did Mr. Mooney's rights get violated under the federal statute? Did Mr. Mooney's rights get violated under the state statute? But he did not propose that instruction, and so the court is left with guesswork, and the court should not guess, particularly in a precedential-type decision, on what the jury was thinking. This problem could have been avoided with a proper crafting of separate instructions on the state and federal law at issue. Okay, thank you, counsel. The Mooney case will now be submitted, and I thank counsel on both sides of the case for their excellent arguments. You will hear from us on that in due course.
judges: FLETCHER, GOULD, NGUYEN